Here on behalf of the petitioner in this case, Anthony Wayne Mangum. Mr. Mangum today serves a federal sentence that has been deemed to run consecutive to a later imposed Oklahoma state sentence. Mr. Mangum serves a federal sentence that has been deemed consecutive despite the fact that no court, federal or state, has ever issued a consecutive order in this case. The federal court, sentencing first in time, issued no opinion on the matter. It was silent. And the Oklahoma state court, sentencing seven months later, was explicit in its wishes that the two sentences run concurrently with each other. The consecutive sentence that Mr. Mangum today serves is the result solely of the wishes of the Bureau of Prisons, which, after the state court was explicit about its wishes, deemed that the two sentences ought to be run consecutively to each other. Mr. Collin, one of the most disturbing aspects of this case, and I think you alluded to it, is the silence of the federal court. Do you have any additional information on that? Yes, Your Honor. We've reviewed the joint appendix on that issue, and there's just simply no information one way or the other from the federal sentencing court on the consecutive versus concurrent question. You didn't call the judge? I did not personally. I think I was a bit too young. I shouldn't be flipping. I shouldn't be flipping. No, there was no effort beyond what's in the record. Yes, Your Honor. The record is not explicit one way or the other. It's complete silence, which leads to a finding here based on logic of ambiguity. It could just as easily be consecutive as it could be concurrent. The Bureau of Prisons, as well as the court below, relied on an erroneous interpretation of 18 U.S.C., Section 3584A. In stating that the federal sentencing court had the intent and discretion to impose a consecutive sentence here, they believe that there is a default rule that when the federal court is silent that the two sentences automatically run consecutively to each other. That is not the case, as this court, as well as the Supreme Court, and sets of the United States, has amply ruled. This court, first in 2006 in the United States v. Smith, as well as later as recently as 2015 in United States v. Obey, has made clear that there is such a consecutive presumption for default rule in that statute, but it applies only when the prisoner is already subject to an undischarged term of imprisonment. It would not apply to the case in which the federal court sentences first in time and the state court only sentences after the fact. Counsel, if you're right about the statute, then isn't the most straightforward thing to do now to send this back to BOP? They got it wrong. They thought that their hands were tied because they imputed this intent to the district court to have the sentences run consecutively. That turns out to have been an erroneous interpretation of 3584. So let BOP look at this properly, exercise its own discretion, follow its own policies, look to what the state court intended, and sort of let BOP do this right. Yes, Your Honor, that is one possible method of resolving this case, but it doesn't fully, in our opinion, answer the textual interpretation given by the Supreme Court in the sets of the United States. On the issue of BOP discretion, the BOP claims that 18 U.S.C. 3621B gives them the discretion to reconcile competing sentencing orders, and they would claim that there is power here under 3621B to affect whatever sentence they choose. But what we do not want to have happen is have a repeat of this same case should the BOP try to misuse the statutory authority under 3621B. The sets of court, and I'm going to quote very briefly from page 1470 of the Supreme Court's opinion here, it says it's the sole, and I'm not quoting yet, it's the sole institutional prerogative of the judiciary to make the consecutive We're in the federal courts, and the federal court here is silent, so there needs to be some kind of a default. Somebody has to make a decision. Federal court didn't. Yes, Your Honor, somebody indeed does need to make a decision. Why isn't it BOP? It's not BOP, especially in this case, because to allow the BOP to make that decision after the state court has spoken. BOP doesn't work for the state court. True, Your Honor, but as independent sovereigns of the state government has control over its own criminal justice system, just like the United States does. So they should have... Yes, Your Honor, I believe you're alluding to some of the claims perhaps made by the government that the state court could have done more to effectuate its own sentencing wishes here, and it is our contention that no, in every case, the state court did try to effectuate its independent wishes, but those wishes were denied every term. From the first, there's no statutory presumption to give the state court guidance, so if the federal court was silent, the state court has no way of knowing whether that federal sentence is supposed to be consecutive or concurrent. They don't know how long it's going to be, so they can't downwardly or upwardly adjust their other state sentence in reflection on that. I'm sorry, because I did have trouble sort of understanding your position in the brief. So you're arguing that BOP doesn't have this kind of sentencing authority. It can't make this decision, which means it must do whatever it has to do to effectuate the intent of the state court? In this particular case, Your Honor. What if the state court sentenced someone to home arrest and said, I want it to run concurrently with your federal sentence? BOP doesn't have the discretion to say, you know what, sitting in your living room is not what we have in mind. We're not going to designate your living room as the facility in which you're serving your federal sentence. In the case in which the federal district court is silent but the state court is explicit, I think that there is no question there that the BOP has to defer to the state court. Has to designate this guy's living room as the place where he's serving his federal sentence. Oh, well, the place of confinement provision is a very different question, Your Honor. That's what it is. I don't understand. Isn't that what BOP is applying here? Yes. How else do you want BOP to effectuate state court intent? Precisely. 3621 is about place of confinement, but it is just that, the place of confinement. It is not about the sentence imposed. It does not answer the question of concurrent versus consecutive sentencing. I think I'm asking my question wrong. Say the state court in this case said, I want this person to serve a 10-year concurrent sentence and I'm sentencing him to home arrest, which should be concurrent with any federal statute. All BOP can do to kind of effectuate that intent is to designate the place where he served his state sentence as also being the place where he's serving his federal sentences. Am I misunderstanding? Isn't that what we're talking about here, designating the facility? We're talking about more than that because the BOP claims that they can use facility designation power to make sentencing decisions. So, Your Honor's question. The problem is they're preemptive because he had already served his state sentence. Correct, Your Honor. And they had no control of his finish. Right. According to the Setzer opinion, page 1470, the non-protonque or place of confinement provision under 3621B gives no discretion to the BOP to make the consecutive versus concurrent decision. So, if they have no discretion, if they've been cut off as an institutional matter for making the decision and the only court to have spoken on the matter is the state court, then we're left with clear direction. It's the state court's concurrency wishes that have to trump because the federal court has said nothing. Could we mandamus the court and make them tell us what they meant? The federal court or the state court? The federal court. We would, but… The state court already made it clear what they wanted, didn't it? Yes, Your Honor, they did. That's clear. It's served and it's clear they intend. The problem is the federal court didn't respond, right? Could we just mandamus them and say, I want an answer? Sometimes we do that from time to time. Yes, Your Honor, but still that would not address the concerns of the Setzer court that 3621B not be used by the BOP to affect its own idea of a sentence when a court has already claimed the contrary, when a court has been explicit about its idea about the sentence. But the BOP doesn't control state law. The state was clear. The state was trying to give the person to the federal court so they would serve them in time, in the proper order. Then you wouldn't have a problem. But they couldn't do that. So, therefore, all they could do is keep the person through their service, their incarceration. They're finished. The question is the only way to implement it is for the federal court to say, yes, the time he did with the state will apply to his federal sentence. State court can't do that. As you argued, BOP can't do it. It seems to me you hear in the Fourth Circuit Court of Appeals that I would just inquire, why wouldn't it? And to be mandamus, tell us why should we either say no, we're going to implement it because that was the intent, and therefore it's considered to be so. I'm just asking. Maybe that's not a remedy. Well, the problem there, Your Honor, is that the state court had an intention of a concurrent sentence with the federal sentence. I understand that. And so if we allow the federal court to come in after the fact, after they were silent, and effectuate its own sentencing wishes, then the state court cannot have its wishes effectuated. No, but if you persuade us that that is the proper disposition in the mandate, not just to tell us what you meant, but to be the amendment so that it will be so. Yes, Your Honor. If the amendment could be such that credit would be granted for the four and a half years served in state confinement, then that would be appropriate here. It's worth noting that there is a further federalism as well as separation of powers concern if the BOP is allowed to use Section 3621B to rewrite the sentencing wishes of a judicial body. The federalism concern is this. If the state court has no presumption to control in the situation of silence on the federal judge's part, it has no way of knowing how long that federal sentence is going to be. But on the back end, the state court even tried, on four separate occasions, to transfer custody of this prisoner as an initial matter to federal authorities to have him serve that federal sentence first to see how long it would be, presumably, and then they would issue their sentencing order later. On four separate occasions from 2007 all the way through January of 2009, the Oklahoma State Court attempted such transfers and they were denied. The record amply says this in Joint Appendix pages 49 through 50. But there's a further separation of powers concern here because to allow the BOP to reconcile this and issue a rewrite of a sentencing order would trample separation of powers sentencing power in the same hands that do the prosecution, the executive. So, counsel, what would happen if the state court were silent also? If the state court were silent also? If you think BOP just has no discretion here, what are they supposed to do if both sentencers are silent? I see that my time has elapsed. May I answer? Certainly, Your Honor. We anticipate that after Setzer, so Setzer gave power to the federal court to issue a concurrent or consecutive order in the first instance. So it's hard to imagine a situation in which both courts would be silent now since the federal court has the first prerogative under Setzer to issue such an order. Let's just imagine one anyway because I really am trying to figure out your separation of powers problem and I just think resolving it, just so I can understand what you mean in terms of your separation of powers principle, what happens if both courts are silent? If both courts are silent then the bodies with the institutional prerogative to make sentencing decisions have been silent. So it would then be more the BOP's role to reconcile the two competing claims because there were no competing claims. The two would be equal, but it's a very different case from this one because one body was silent and one body was very explicit. And if the state court had, in this case, had said, I want the sentences to run consecutive, BOP would have been obliged to give effect to that also, could not have designated the state facility as the place of the federal. Correct, Your Honor. Because under 3621B they have no discretion to make the sentencing decision on that point. Thank you. Mr. Andrews. May it please the court, my name is Travis Andrews and I'll be arguing the third issue in the appeal concerning the prison's decision to deny Mangum's non-protonque request. If granted, as we've been discussing, the non-protonque request would have designated the state prison as the place of service for Mangum's federal sentence. Under the Arbitrary and Capricious Act set forth under the APA, any agency must articulate a rational connection between the facts found and the adjudications it makes. It also, most importantly, must conform its application of the law to correct understanding of the statute. The BOP failed in both aspects in Mangum's case. First, Congress does give the BOP discretion under 3621B in deciding whether to grant a non-protonque request. I'm sorry, I thought your whole position was BOP does not have discretion. I'm so confused. So this is an alternative argument that, based off of the record here, through the administrative appeal, the BOP does have discretion to designate a place of confinement. So here at Factor 4, Congress has limited the BOP's discretion by five factors under 3621B. I would like to draw your attention to Factor 4 under this analysis, in which the BOP is instructed by Congress to take into account any statement made by the federal sentencing court. Here, as we've been discussing, the court was silent on the issue. The BOP has interpreted the federal court's silence as meaning that the sentences were to be served consecutively. Why do you say that? That doesn't look much like an interpretation to me at all. Interpretation of the statute? Interpretation of nothing. The Bureau of Prisons asked the sentencing court, what did you intend here? Sentencing court, for reasons that bother all of us, I believe, is silent. So there's nothing to interpret. Is there? The Bureau of Prisons simply has to make a decision about whether to grant him credit or not. They do. And they decided not to. The interpretation I'm referring to here is of Section 3584A in the U.S. Code. So it's not interpreting the federal court's silence. No, sir. Okay, all right. Perhaps I misunderstood. I apologize for that. So here, where we've argued that Section 3584 does not act as a presumption in this case, the BOP is incorrect in applying Factor IV as meaning that the federal sentencing court intended to have the sentences served consecutively. We argue that because it has based its opinion on this factor incorrectly, one of the three factors that deemed relevant, it should be remanded to the agency to reconsider under a correct interpretation of Section 3584A, which, again, it said offered a presumption that the federal sentencing court intended for the sentences to be served consecutively. So this sounds like the argument your colleague made a few minutes ago. That's correct. Okay. Yes, Your Honor. All right. But you say it's an alternative argument. Well, the first argument is there's no discretion here. They have to run it concurrently. They have to get credit. That's correct. But if they had discretion, then they, what, abused their discretion? The Bureau of Prisons abused its discretion in failing to make it a non-protonic designation in the place of defiance. Well, we would argue that they would fail under the abuse of discretion standard that this court would apply in reviewing the agency's decision because it misapplied factor four. By the way, this is subject to APA review? It would be, Your Honor. Arbitrary and capricious review. It's a final agency action. It's an agency action under the APA? Yes, sir. And all the administrative pieces have been exhausted. Second, we would like to draw this court's attention to Are we reviewing that or are we reviewing the district court's decision? This issue in the appeal is reviewing the Bureau of Prisons' decision. We're not reviewing the district court's adjudication? Of the Bureau. Of the petition? For this issue, I'm primarily concerned with the Bureau of Prisons' actions. Okay. You agree that the BOP has no authority to sentence anyone, correct? That's correct. All right. We know that. They can't sentence. Well, in this case, is it really effective? It's really unfortunate, but isn't the truth of the matter that the state lost their leverage when they had him complete his state sentence? They lost control. Well, the state court had tried several times to remand Mayhem. But didn't they lose their control when they decided to incarcerate him to his full state term? What I mean by control, I mean it's a clear expressed wish. They want the time spent in state prison to be subtracted from whatever the federal court sentenced him to, right? You know that, right? But once the state allowed him to finish his sentence, they lost all leverage. Because their federal courts said, no, I don't want it to be that way. And they could, right? That federal judge could have said, I want it to be consecutive. That would be totally against the wishes of the state, correct? Yes. But there's nothing the state can do about it. Nothing. I don't know what the state would have done with Mayhem. What could they do? Having expressed that they wanted it to be concurrent, what could they do if the federal judge said, now, I'm giving this time, and it is going to be consecutive. And nothing that he's done with the state in terms of incarceration will count against it. What could the state do? I see my time's expired. But I'm the lead judge, particularly. And you can answer my question. As you can also. I was my dear colleague. Go ahead. Well, I don't think that happened in this case, the federal judge. I know it did. It would be a hypothetical. Go ahead. Well, I suppose then the state would be stuck with Mayhem. They would be stuck with it, wouldn't they? Exactly. They would be stuck with it. But they should have said, OK, if you won't come get him and let him do his time, we're going to put him on parole, whatever parole, but we're going to state his sentence and give him an O.R. and let him stay out so he can get his time before that. And then when you sentence him, we'll know he got credit because he was free that whole time. Right? Yes. Right. That's what happens. See, you let, in terms of federalism, some things, let's say, I like the old saying that the law won't do for you what you won't do for yourself. When you let the federal government preempt you and take people out of your state jails and prosecute them before you, and then when you come back and you sentence them, you say, would you take them? No, I'm not going to take them. You give up the leverage. Federalism is in your own hand. I'm just telling that to you. It's not about you. This is a different soapbox. But an important one. But it's an important one, though. That's exactly the thing. You lose the leverage because, man, you're faced with a court won't even respond to the letter, won't say anything. What did I say? The sentence is the sentence. I don't need to say anything more. That's why I said it. I just worry about mandamus. Sometimes we get people's attention that way. So the taxpayers of Oklahoma anted up for years, and now the taxpayers of the United States are answering up under circumstances where at least one judge didn't want that to happen. Clearly, unmistakably, thought that taxpayers shouldn't pay as much as we're paying to impose an appropriate punishment. That's correct. Thank you so much, Mr. Andrews. Mr. Breedenburg. Breedenburg, thank you, Your Honor. May it please the Court. My name is Michael Breedenburg, and I represent the United States. Something that nobody spoke about in this case, but everybody was sort of highlighting is the concept of primary jurisdiction, and that's what is the real issue here. And you just alluded to it, Judge Gregory, at the end about the state having the ability to do what it wants. That is the jurisdiction, the sovereign, that has primary jurisdiction in this case. Because Mangum was arrested by the state first, the state obtained primary jurisdiction and never gave it up. When he was written out to the feds for the feds' charges, that's all it was. He was simply written out. The state never gave up primary jurisdiction on a writ. The feds then processed their charges, sentenced them to a period of time. The judge didn't say anything about concurrent or consecutive, because actually at that time, this court's precedent in Smith didn't allow the district court to make a comment as to whether a sentence connected to a future yet-to-be-imposed state sentence is even allowed. But since then, there's some order over the day. Sure, sure. Did your office contact the court? Yes. Has your office contacted them? Well, the Bureau of Prisons did, yes. I'm talking about your office. The U.S. Attorney's Office? No. Yes, sir. No, sir. Why wouldn't, in a case like this, and I don't mean to sound disapproving, although I'm very feeling very disapproving. Why wouldn't, in a case like this, the United States Attorney pick up the phone? Judges take calls from U.S. Attorneys all the time. Judge, what do you want to do here? Why didn't the Department of Justice lawyer at the Bureau of Prisons pick up the phone? Judge, you know, we sent you this request. We know you're busy. We know you've got a lot of stuff on your desk. We know you don't want to revisit old stuff, but Judge, what did you want to do here? What do you want to happen? Your Honor, the Bureau of Prisons has a procedure. Oh, what an answer. Whereby, you know, in this situation that happens to happen a lot, you know, there are drug cases where there's state charges, there's federal charges. The Federal Bureau of Prisons has a situation where federal courts are silent. And there's a primary state jurisdiction. The sentence has ended. The Federal Bureau of Prisons receives the inmate finally to start serving its federal sentence. When the Bureau of Prisons has to then make its decisions of how long does that federal sentence go, they have to follow the law. The first thing they do… And they contacted the judge. Not quite. Well, I've been contacted. I was a district judge for 14 years.  But I got these requests, and I always responded. And frankly, I would hope that any federal district judge would respond to the Bureau of Prisons. Okay. And you're telling me that some don't. Well, that's where we are in this case, yes. But here's how it goes. The Bureau of Prisons receives the inmate. By the way, I don't mean to cut you off again. But I'm not suggesting at all, because I know better, that the Bureau of Prisons is bound by what the judge said. If that's what you were going to say, of course not. I totally get that. But the Bureau of Prisons doesn't ask the judge for input just for no purpose. They really want to know. Right? Yes. They really want to know. What did the judge… Because that's what the Bureau of Prisons' mission is, to implement the prison intended by the court. And I'm just disturbed that, with all respect to all our colleagues, a federal judge who won't respond to the Bureau of Prisons in a case like this should disturb all of us. And frankly, I think the Bureau of Prisons and the U.S. Attorney ought to really push the envelope. And not let the judge navigate through the phone, frankly. I hope I'm not crossing the line here. It was just a letter? BOP puts an actual letter in there? If I may just kind of finish my thought about the procedure. Is it possible it just got lost in the mail? Nobody followed? I suppose that's possible, Your Honor. It was just a letter? Yes. Okay. Again, the way that it happens, and I understand you're concerned about Bureau of Prisons policy, but the Bureau of Prisons starts the sentence when the individual shows up in federal custody. That's when the sentence starts. So necessarily, this whole thing starts as a federal consecutive sentence. It's the default. It's how it works. There's no other way for it to happen. So then the Bureau of Prisons, some kind of way, whether it's the sentencing court coming back to the BOP, or whether it's, in most cases, the inmate saying, hey, Bureau of Prisons, will you consider running my state sentence that I ordered? Will you consider running it concurrent or allowing me to run it concurrent by designating me to the state? That's how the Bureau of Prisons gets the request. And so that's when the procedure comes into play as to how does the BOP do that. So as the Third Circuit in Barton set forth, there's this procedure that the Bureau of Prisons goes through, and it looks at the 3621B factors to determine whether or not to use its designation authority to place an individual in this case, the state. And so that's when the Bureau of Prisons then starts to look at all the things, including the judge's intent. So it doesn't happen in every case. It only happens when the inmate asks, as happened here. Well, I'm sorry. With all respect, you're leaving out a very important step. There's something called a judgment and commitment. Right. And in most districts, federal offenders who are detained before trial are kept, I shouldn't say in most, but in many, are kept in local detention facilities. Right? Right. So the Bureau of Prisons, it's not true that the Bureau of Prisons counts day one when the person comes through the door, gets off the wagon. Actually, they look at the judgment and commitment to see what the judge said in the judgment and commitment and to see what the U.S. attorney said about when the person was taken into custody. So the custody is almost always retrospective for a detained defendant because the defendant gets credit in most instances, as you well know, for the time spent awaiting trial or plea or operation. We have defendants in local custody for three years, four years, while they're earning their substantial assistance credit. So again, I don't mean to sound disapproving. And I understand you're talking about the special situation where someone is coming from state custody on a state sentence. The Bureau of Prisons, the default is, okay, now the federal sentence starts. But then they start examining the paperwork. It's not just because the inmate says, by the way, I've been in custody. And even here they went back and gave him the credit for the seven days or whatever it was. Sure, and that's the prior custody credit you're talking about. Right. It's a different statute. It's actually a totally different thing. He got credit for prior custody credit that wasn't credited to anything else. Right. But what we've got here in the time period that we're talking about is the time period that actually he served another sentence that was already in play for four and a half years. And as Judge Gregory pointed out, the state didn't do enough. Whether they tried to get the Bureau of Prisons to take him or tried to get the federal government to take him in some kind of way, they didn't do enough. And it's not their fault necessarily that they made a mistake of how to. . . Was this an interstate detainer issue? No. That didn't come into play here at all as far as you know? No. The individual was arrested. Mr. Mangum was arrested by the state. He was ridded out by the feds. The feds did everything that the feds needed to do. And then sent him back. Sent him back to the state. So the federal sentence just sat on the shelf waiting for the state to complete its proceedings. So it's like classic ineffective assistance account. No lawyer in her right mind would ever permit this to happen. No lawyer of minimal competence would ever permit a defendant to be sentenced in federal court and then sent back for processing in state court. Very few lawyers would ever do that intentionally. You're furrowing your brow. . . I thought I was following along. The reason is because this is exactly what happens. This is exactly what happens when you permit your client to leave federal custody after sentencing and go back for processing by the state. Because who knows when he's going to come back? Suppose he's gotten 25 years in state court. Well, I think the answer . . . Suppose he's gotten 25 years on the new charge and then had been sentenced on an outstanding probation violation for another five years. So he's sitting in state prison for 30 years earning nothing against his federal sentence. So no lawyer would ever, at least no lawyer where I come from, would ever do such a thing. I'm not sure that the lawyer, the federal lawyer, would have had an option. This, again, is a . . . Of course he does. Judge, we want to postpone this sentence. We've got outstanding charges in Tulsa and Oklahoma City and whoever knows where. Good lawyers clean up all that mess because otherwise this is what happens. Good lawyers want the federal sentence to come last because you've got a shot at convincing a federal district judge to run the federal sentence concurrently. This particular case, I understand what you're saying about the federal . . . I'm going to be quiet. The federal lawyer, but in this . . . I've said enough. In this particular case, I think that your point is kind of directed to the state proceedings because, again . . . Well, it is. That's what Judge Gregg was pointing out. We're talking about the state has the ability to do with their sentence what they want. And they should know about primary jurisdiction. They should know about preferences. They should know about how the federal government is going to effectuate its sentences. Whether they do or not, we don't know. But they didn't do it the right way. As Judge Gregory pointed out, the state sentenced him. They sentenced him to a consecutive sentence, concurrent, sorry, concurrent sentence thinking that that was going to take up some time. They could have released him on bond to go to the feds. They could have sentenced him to a shorter period of time in the state recognizing that he was going to the feds because the feds had already issued their sentence. They knew what it was. They also could have released him on parole earlier. And, by the way, the state released him on parole four and a half years into a 10-year sentence. The reasons we don't know. But they did that. So that may . . . They came out of state prison. That may have had something to do with it. That may have been one of their ways to effectuate their sentence. And they did it. But, again, the state's actions do not affect, do not control what the federal government does. And if it's ineffective assistance of the federal defender or the lawyer, that's really neither here nor there. It happened. And the facts that we have in this case are primary jurisdiction in the state. The state has to complete its obligation or the individual completes its obligation to the state. Then he comes to the feds for the execution of that sentence. And that's where the Bureau of Prisons has this big job to answer all the questions as to how to do it. And they do that by following the statutes that apply, if there's a stated intent by a district court, and if it's a situation like this where there's a question of concurrent sentencing, whether they can exercise this discretion to designate and use their designation authority to designate the federal inmate to a state. And in this case, the Bureau of Prisons did all that. They looked at all the sentencing statutes, the application of how sentences are supposed to be run. They checked into the intent of the federal district court, didn't get an answer, and did the five-factor review that they're to do under 3621 to determine if designation to a state facility is appropriate. They did that. They did it appropriately. And they came to a decision and a conclusion that Mr. Mangum didn't like. And that's really the facts here and what we're up against. They did have discretion to grant enough pro-cum credit, correct? Certainly. No question about that. In this case, that's the government's position, yes. But I don't understand. So I thought your position was that under the statute with the – hang on. Is it 3584? Yes, it is. That under 3584, you have to impute, in this case, the intent to the district court to have the sentences run consecutively. I don't believe that it was our position that it was impute. I believe that it was that there are factors that we can look at, including the presumption of consecutiveness in 3584, that helps the Bureau of Prisons make its determination on what to do. So you're saying even if the district court did intend the sentences to run consecutively, it's still up to Bureau of Prisons? Not if it was affirmatively stated. After Setzer, either way, if it's affirmatively stated by the district court, the Bureau of Prisons wouldn't have the discretion. But if it is the intent of the district court under the default rule, then the Bureau of Prisons does have discretion? I don't understand that. I thought that was one thing Setzer was clear about, that the default rules bind the Bureau of Prisons. The default rules bind the Bureau of Prisons? Yeah. If the default rules apply, yes. Right, and you think the default rules apply here? Correct. So you think Bureau of Prisons didn't have discretion? I think that in this particular fact pattern, based on what we have, yes, the Bureau of Prisons would have followed and did in this case. They did go through the Bargain Review. But you think they could only come out one way, because under the default rule, the district court intended consecutive sentences, and therefore Bureau of Prisons does not have the authority to effectively run them concurrently. I thought that's what your brief said. Yeah, that's right. After Setzer, that's the position. In a case like this, yes. All right. Sorry, can you just tell me, hypothetically, if I disagree that the default rule applies here, then you think Bureau of Prisons has discretion? Yes. If the default rule does not apply, the Bureau of Prisons, again, somebody, as Setzer pointed out, has to answer the question. And it's going to be someone from the federal system, Setzer says. Right. It's the Bureau of Prisons. It's the government's position, yes. Okay. And then just, I'm sorry, the last piece of it is, if I'm looking at this Bureau of Prisons decision, and it looks to me like they were relying on that default rule in denying the non-proton designation, and they were doing that improperly because the default rule doesn't apply, this goes back to Bureau of Prisons? No. The government's position is that the application of the default rule is one of the factors that they would have considered. And the default rule would play into factor four, which is the intent of the federal court. And so if the default rule were not to apply, that would just be one factor that the Bureau of Prisons couldn't consider. The Bureau of Prisons would still have discretion, or they'd have to, determine how to run the federal sentence. Just the Bureau of Prisons wouldn't be relying on the presumption of consecutiveness. But it did in this case, so doesn't it have to go back to see if they come out the same way once they're no longer relying on it? If I may, are you referring to the Bureau of Prisons administrative remedy response? Yes. Okay. So I believe that, I don't have it in front of me right here, but I believe that that reference to the default rule is just a part of the BOP's response, that it's not that the BOP is relying on the default rule entirely in making its decision. But it's one of the factors it relied on, and if that, if I think they shouldn't have relied on it because they're reading it wrong, we'd send it back. How do we know they come out the same way? They think the district court intended the sentence to run consecutively. Or at least they're assuming that. Right. You'd think they would have weighed that pretty heavily. Yeah. They may have. Looks like they did. And if we make such a remand, I'm sorry, Judge Gregory. Go ahead. If we make such a remand on the basis of legal error that infected the exercise of its weighing of the factors, would you be opposed to some strong language to the effect that they need to make greater efforts to get input from the judge? Well, I'm not going to argue with you, Your Honor, but I don't believe that's necessary, and I don't believe that a remand is necessary here either. I understand that. Because the Bureau of Prisons is not bound by anything other than their discretion in applying the factors. I understand that entirely. So I'm going to take that as a no, Your Honor. I wouldn't be opposed to strong language. Mr. Big Bird. Do you think that the BOP has the power, whether interpreting the default rules or whatever, to effectuate the intent of the state authorities? No, Your Honor. At all? Well. That's categorical. Because that's really what it comes down to, really, to some extent. And because we know if it's looking on the side of the federal, they have nothing but a sentence, which they presume would seem to be rather logical, that it is consecutive. But they also have a clear indication, not an indication, but a clear mandate from the state saying we want it to be so. So they can never base their decision in terms of limited incarceration on trying to effectuate the intent, clear intent of the state. Is that your position? Yeah. I think if I heard your question, is the Bureau of Prisons bound by the state, I would say no. But if the Bureau of Prisons should consider the state's opinion, I would say yes. Okay. Well, if you consider their opinion and you have something over that side and nothing from this side, would the state win? Not under the facts of this case. Why not? As you pointed out before, the state is already done. Okay. Once they've done that. It may sound callous, but, again, they had the ability to effectuate their sentence how they wanted to do it. Absolutely. I'll try this on you. So far I haven't gotten much traction. Do we have the power to mandate, I mean to mandate us to effectuate the state intent? I would say the government's position would be no, Your Honor. And the reason would be is that even though through Setzer, the district court sentencing court, federal sentencing court, has the ability, authorization to issue a sentence however they want to do it. They don't have to. This court recognized that in the Butler case real recently, the Fourth Circuit in December, and recognized that district courts do not have to exercise the authority that Setzer basically gave to them. I see. Okay. So they don't, the district court does not have to implement what the state's wishes were. Correct. All right. Now, a little bit different. Can we mandate, mandate us an answer to a question that was asked that we have no response to? I would say, Your Honor, that the Fourth Circuit Court of Appeals could pretty much do whatever they want to the district courts. We don't want to do that because this is not a nation of fiat law. We try to do it with some structured process. I'm asking you to help us that we do it jurisprudentially in an approving way. My answer will disagree with Judge Davis's point, of course, but district courts believe that they have their own authority and that they can make their own decisions without being told by other people what to do. Just my experience. And I think if they hear from the Fourth Circuit Court of Appeals, they may be prompted to answer a question. But for whatever reason, Judge Tilley decided not to answer the Bureau of Prisoners' request as to his intent. He chose to do that, and we don't know what it is. Can I ask a question about the district court now? And again, I just want to make sure I'm understanding this. If the district court had said in the sentence itself, this is consecutive, you think Bureau of Prisons cannot effectively ... Okay. If the district court, if the default rule of the statute applies, then also BOP is without authority to kind of contradict that through what is effectively a concurrent sentence. If the district court answers the letter and says, now that I think about it, I do think it should run consecutively, then does Bureau of Prisons have discretion to say ... Consecutively or concurrently? I'm sorry, consecutive. If the district court says, now that I think about it, I'm answering your letter, let's go with consecutive, does that bind Bureau of Prisons in the same way as if he had done it with the original sentence? Yes, I believe that the Bureau of Prisons would treat that intent, that affirmative intent from the district court as a part of the sentence directing the Bureau of Prisons what to do. So it would be binding. I know we have case law from pre-Setzer saying it's not binding, but you think it is? In this particular case, because it's a federal state case, which has obviously been abrogated or Setzer has abrogated Smith in that case. I was just wondering, it doesn't matter what the district court says. It's no different if the district court says, thanks for calling this to my attention, what I meant to say the first time was it's consecutive. That's binding, and it's also binding if the district court judge says, I actually had no intent at the time, I didn't know what was going on. But now that I think about it today, I think it should be consecutive. That is also binding? You were using the word binding. I think the way I would put it is that the Bureau of Prisons would certainly implement the federal judgment in that manner, through the stated intent of the district court, I guess. Is there nothing further? Thank you. Mr. Cullen. Thank you, Your Honor. I just wanted to answer your question earlier, Judge Gregory, about a mandamus. And a mandamus to the district judge to answer the question is an acceptable alternative to us in this case, combined with a remand for that answer to be considered in reevaluating this matter. It is our position that if the BOP granted a non-proton designation in this case, it would have effectuated the state court's wishes. So the court need not pass on Issue 2, the 3621B discretion issue. Effectuating the wishes of the state court is still possible, even if the BOP still has discretion under 3621. The last point is in response to an earlier point made by the government. Regarding the five-factor review, it's worth noting that this court's unpublished precedent in trial noted that the voice of the district court, when it was asked when the BOP was doing a non-proton determination, that that voice was given controlling weight. So it's not as though all factors in that five-factor analysis are looked at with equal weight. The views of the federal district court, when asked, are given controlling weight. But it's also worth mentioning that in Factor 4, as my colleague Mr. Andrews argued, Factor 4 relied on a mistaken presumption of 3584A. They relied on a presumption that when the federal judge says nothing, it's automatically consecutive. We know now after Setzer, but we knew as early as 2006 from this court's precedent in Smith, that that only applies when the federal court is sentencing second and not first. The last thing to mention, Your Honor, is that the authority relied on by the government. Matt, I see my time is elapsing. May I finish? Yes, you may. The authority relied on by the government in their 28J motion about new authorities. Butler also relied on a mistaken presumption about 3584A. It's quoted in the opinion as a presumption that disagrees with the Setzer court's opinion on that very matter. It talked about a presumption unequivocally applying in all situations, that when the federal court is silent, that the sentences are deemed to run consecutive. We know after Setzer and from this court's precedent in United States v. Obie, that that is not the case. Mr. Mangum is the only person here who did nothing wrong, and he has been caught in the switches and deserves a form of relief. Thank you, Your Honor. Thank you. Professor, I note that you're a court opponent, and it's a double pleasure because we thank you for your service in terms of representing clients, but you also bring the academy here to find examples of great law school in Virginia, and we thank you so much for your service. Thank you, Your Honor. And also we note, of course, Mr. Bramberg, your client-enabled representation in the United States. We're going to ask the clerk to...
judges: Roger L. Gregory, Pamela A. Harris, Andre M. Davis